# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

BOBBY LANHAM,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:17-cv-775
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Bobby Lanham brings this action pursuant to 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security ("Commissioner") denying

his application for disability insurance benefits ("DIB"). This matter is before the Court on

plaintiff's statement of errors (Doc. 10), the Commissioner's response in opposition (Doc. 20),

and plaintiff's reply (Doc. 21).

## I. Procedural Background

Plaintiff filed his application for DIB on January 26, 2011, alleging disability since

September 22, 2010, due to vertigo and deafness in his left ear. The application was denied

initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de*

*novo* hearing before administrative law judge ("ALJ") Larry A. Temin. Plaintiff and a

vocational expert ("VE") appeared and testified at the ALJ hearing on June 3, 2013. On July

22, 2013, the ALJ issued a decision denying plaintiff's DIB application. (Tr. 14-21). This

decision became the final decision of the Commissioner when the Appeals Council denied

review on November 28, 2014. (Tr. 1-6).

Plaintiff then timely commenced a civil action, *Lanham v. Commissioner of Social*

*Security*, No. 1:15-cv-0050 (S.D. Ohio Jan. 26, 2015). This Court reversed the Commissioner's

decision to deny DIB and remanded the matter under sentence four of 42 U.S.C. § 405(g) on

January 19, 2016. (*Id.*, Docs. 18 and 19; Tr. 389-406). The ALJ was directed on remand to conduct further factfinding, give plaintiff the opportunity to provide additional evidence, and consider "the episodic nature of plaintiff's Meniere's disease and vertigo." (Doc. 18; Tr. 405).

On April 4, 2016, the Appeals Council vacated ALJ Temin's decision and remanded the matter for further administrative proceedings. (Tr. 409-12). A second administrative hearing was held on December 9, 2016, before ALJ Robert W. Flynn. (Tr. 332-67). Plaintiff appeared with counsel, and plaintiff and a VE testified at the hearing. On December 22, 2016, ALJ Flynn issued a decision finding that plaintiff was not disabled within the meaning of the Social Security Act at any time between September 22, 2010, the alleged onset date, through September 30, 2016, the date last insured. (Tr. 315-25). The decision of the ALJ became the final administrative decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 27, 2017.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

2

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] last met the insured status requirements of the Social Security Act on September 30, 2016.

2. The [plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of September 22, 2010, through his date last insured of September 30, 2016 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the [plaintiff] had the following severe impairments: Meniere's disease with left hearing loss, degenerative processes causing lower back pain, major depressive disorder, and adjustment disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, the [plaintiff] had the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) except that he could only occasionally push and pull within his lifting restrictions with his left lower extremity. The [plaintiff] could only occasionally use foot controls with the left lower extremity. He could never climb ladders, ropes, or scaffolds. The [plaintiff] could occasionally climb ramps or stairs, balance, stoop, crouch, kneel and crawl. The [plaintiff] was limited to moderate exposure to vibration and had to avoid exposure to hazards such as the use of moving machinery, unprotected heights, commercial driving, unprotected sharp objects, unprotected bodies of water, and vibrating tools or power tools. He was limited to a work environment that did not expose him to more than a moderate amount of noise, with moderate being defined as something along the lines of a business office, department store, or the sound of traffic. So along with that the [plaintiff] can do no outdoor work. He was further limited to work that involves simple, routine, and repetitive tasks performed in a low stress environment, defined as free of fast paced production rates such as seen with assembly line work, strict hourly production requirements, involving simple work related decisions, and with few, if any work place changes. The [plaintiff] could have no more than occasional interaction with the general public, coworkers, or supervisors, and a job he performed should involve no more than occasional verbal communication.

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[2]

---

[2] Plaintiff's past relevant work was as a machine mechanic, a medium, skilled position; a forklift operator, a medium exertion, semi-skilled position; and a laborer, a medium, unskilled position. (Tr. 323).

7. The [plaintiff] was born [in] . . . 1966 and was 50 years old, which is defined as a younger individual age 18-49, on the date last insured. [Plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a)).[3]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from September 22, 2010, the alleged onset date, through September 30, 2016, the date last insured (20 CFR 404.1520(g)).

(Tr. 317-25).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a two-fold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled jobs of sorter, with 90,000 jobs nationally; packer, with 150,000 jobs nationally; and cleaner, with 100,000 jobs nationally. (Tr. 324).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

## E.      Specific Error

On appeal, plaintiff argues that the ALJ did not weigh the opinion of his treating physician, Dr. Jennifer Lager, D.O., in accordance with 20 C.F.R. § 404.1527 and SSR 96-2p. (Docs. 10, 21). Plaintiff argues that the medical evidence substantially supports Dr. Lager's opinion. Plaintiff contends that in making a contrary finding and giving Dr. Lager's opinion only "some weight," the ALJ failed to adequately consider the episodic nature of Meniere's

disease and did not properly account for evidence submitted post-remand that is consistent with the earlier evidence and substantially supports Dr. Lager's opinion.

### 1. Treating physician standard

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. Under the treating physician rule, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. . . ." *Rogers,* 486 F.3d at 242; *Wilson,* 378 F.3d at 544. The rationale for the rule is that treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Rogers,* 486 F.3d at 242.

A treating source's medical opinion must be given controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2)[4]; *see also Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013). If a treating source's medical opinion is not entitled to controlling weight, the ALJ must apply the following factors in determining what weight to give the opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole,

---

[4] The regulation was in effect until March 27, 2017, and therefore applies to plaintiff's claim filed in 2013. For claims filed on or after March 27, 2017, all medical sources, not just acceptable medical sources, can make evidence that the Social Security Administration categorizes and considers as medical opinions. 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017).

and the specialization of the treating source. *Wilson*, 378 F.3d at 544. *See also Blakley*, 581

F.3d at 408 ("Treating source medical opinions [that are not accorded controlling weight] are

still entitled to deference and must be weighed using all of the factors provided in" 20 C.F.R. §

404.1527(c) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4)[5]. In addition, an ALJ must

"give good reasons in [the] notice of determination or decision for the weight [given to the

claimant's] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). The ALJ's

reasons must be "supported by the evidence in the case record, and must be sufficiently specific

to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (citing

Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). This requirement serves a two-fold purpose: (1)

it helps a claimant to understand the disposition of his case, especially "where a claimant knows

that his physician has deemed him disabled," and (2) it "permits meaningful review of the ALJ's

application of the [treating-source] rule." *Wilson*, 378 F.3d at 544.

"A failure to follow the procedural requirement 'of identifying the reasons for

discounting the opinions and for explaining precisely how those reasons affected the weight

accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the

ALJ may be justified based upon the record.'" *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x

543, 551 (6th Cir. 2010) (quoting *Rogers*, 486 F.3d at 243). *See also Hensley v. Astrue*, 573

---

[5] SSR 96-2p was rescinded effective March 27, 2017, when the Social Security Administration published final rules that revised the rules and regulations applicable to the evaluation of medical evidence for claims filed on or after that date. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5844-45, 5869, 5880. Since plaintiff's claim was filed in 2013, SSR 96-2p applies to this case. *See Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 437 n. 9 (6th Cir. 2018).

F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 545) (remand is appropriate "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" and the ALJ's opinion does not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.).

Opinions from non-treating and non-examining sources are never assessed for "controlling weight." A non-treating source's opinion is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6). Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the medical opinions of treating and other examining sources. 20 C.F.R. § 404.1527(c)(3).

### 2. *Weight to the medical opinion evidence*

Dr. Lager issued two medical opinions. The first was a one-sentence letter dated March 12, 2012, which states in full: "[Patient's] Meniere's disease affects his ability to work." (Tr. 286). The second was a "Meniere's Disease Medical Source Statement" which Dr. Lager completed on May 29, 2013. (Tr. 301-04). She reported that the nature, frequency and length of contact with plaintiff varied. (Tr. 301). She listed his diagnosis as Meniere's disease and indicated on a check-box list that plaintiff has (1) a history of frequent attacks of balance

disturbance, and (2) progressive hearing loss. She indicated on another check-box list that symptoms associated with his attacks were vertigo, nausea/vomiting, sensitivity to noise, mood changes, mental confusion/inability to concentrate, and fatigue/exhaustion. (Tr. 302). Post-attack manifestations were confusion, exhaustion and irritability, and the length of time these manifestations persisted after an attack varied. (Tr. 302-03). Plaintiff also suffered loss of coordination following an attack, which interfered with his daily activities. (Tr. 303). Dr. Lager reported that the average frequency of plaintiff's Meniere's attacks was four per month. (Tr. 302). Plaintiff did not always have warning of an impending attack, and the length of time between any warning he did have and onset of the attack varied; attacks could occur in the morning, afternoon or evening; plaintiff could not always take safety precautions when he felt an attack coming on; and there were no precipitating factors. Noise and moving around made the attacks worse. Dr. Lager opined that emotional factors contributed "very much" to the severity of plaintiff's attacks and that he was incapable of even "low stress" work. (Tr. 303). His attacks were treated with the medications Meclizine and Paxil as needed, and side effects of the medications were insomnia and weight loss. Plaintiff's prognosis was "average." Dr. Lager opined that plaintiff would generally be precluded from performing even basic work activities and would need a break from the workplace during an attack. Dr. Lager reported that if plaintiff would sometimes need to take unscheduled breaks during an 8-hour workday, she was unsure as to how often this would happen and how long plaintiff would need to rest before returning to work. Dr. Lager opined that aside from unscheduled breaks, plaintiff was "likely to be 'off task' while working"; that is, his "symptoms [would] likely be severe enough to interfere

10

with attention and concentration needed to perform even simple work tasks" 25% or more "of a typical workday." (Tr. 304). She opined that plaintiff's impairments were likely to produce good days and bad days. Dr. Lager estimated that if he were trying to work full-time, plaintiff would likely be absent from work more than four days per month as a result of his impairments or treatment. Dr. Lager opined that plaintiff's impairments were reasonably consistent with the symptoms and functional limitations set forth in the medical statement. When asked to describe any other limitations, such as exertional, postural, or environmental limitations, that would affect plaintiff's ability to work at a regular job on a sustained basis, Dr. Lager wrote that "all of the above would effect [sic] patient during an episode." (*Id*.).

The ALJ gave Dr. Lager's March 2012 "general opinion" that Meniere's disease affects plaintiff's ability to work "great weight." (Tr. 323, citing Tr. 286). The ALJ found Dr. Lager's opinion that plaintiff's Meniere's affected his ability to work was "reflected" in the RFC the ALJ had formulated. (Tr. 323). The ALJ found:

> To the extent that it is given weight, Dr. Lager's assessment is accommodated by finding that on and prior to September 30, 2016, [plaintiff] was limited to performing work within the light exertional range; that he could never climb ladders, ropes, or scaffolds; that he could only occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl; that he was limited to moderate exposure to vibration and had to avoid exposure to hazards such as moving machinery, unprotected heights, commercial driving, unprotected sharp objects, unprotected bodies of water, and vibrating tools or power tools; that he was limited to a work environment that did not expose him to more than a moderate amount of noise such as that which occurs at [a] business office, department store, or in traffic; and that he could do no outdoor work.

(*Id*.).

The ALJ gave Dr. Lager's May 2013 medical opinion in which she assessed specific functional limitations "some weight." (Tr. 323). The ALJ summarized Dr. Lager's findings but did not include the symptoms that Dr. Lager reported were associated with plaintiff's attacks, i.e., vertigo, nausea/vomiting, sensitivity to noise, mood changes, mental confusion/inability to concentrate, and fatigue/exhaustion. (*Id.*; *see* Tr. 302). The ALJ discounted Dr. Lager's assessment for three reasons: (1) some of the new evidence received at the hearing level after Dr. Lager's assessment showed that "the episodic nature of [plaintiff's] symptoms was not as frequent or severe as Dr. Lager has described during the time period under consideration"; (2) her opinion that she would expect plaintiff to be "'off task' at least 25% of a given work day" was not supported by a statement to that effect anywhere in the treatment record; and (3) Dr. Lager's assessment that she was "unsure" how many unscheduled breaks plaintiff would need during the day and that plaintiff suffers an average of four Meniere's attacks per month were inconsistent with her opinion that she would expect plaintiff to be "'off task' at least 25% of a given work day." (Tr. 302).

The ALJ likewise gave "some weight" to the opinion of the non-examining state agency physician, Dr. Leon D. Hughes, M.D. (Tr. 322, citing Tr. 268-75). Dr. Hughes reviewed the record in November 2011, before Dr. Lager had issued her functional capacity assessment. Dr. Hughes reported that plaintiff had lost all hearing in his left ear and imposed restrictions against concentrated exposure to noise, climbing ladders/ropes/scaffolds due to occasional dizziness, and hazards/unprotected heights due to dizziness and loss of hearing. (Tr. 270-72). The ALJ found based on the new evidence submitted post-remand that plaintiff was limited to work in the

light exertional range as a result of "periodic dizziness and weakness." (Tr. 322). The ALJ stated: "To the extent that it is given weight, the report of the reviewing state agency physician is accommodated by finding that during the time period under consideration the claimant was limited to a work environment that did not expose him to more than a moderate amount of noise, such as would occur in a business office, department store, or with ordinary traffic; and that he could do no outdoor work." (*Id.*).

### 2. *The ALJ improperly weighed the opinion of the treating physician, Dr. Lager*

The ALJ erred in weighing the medical opinion evidence. Specifically, the ALJ erred by failing to evaluate Dr. Lager's May 2013 opinion for controlling weight and to provide "good reasons" for giving the opinion only "some weight."

Initially, the Court finds that Dr. Lager's March 2012 letter stating that plaintiff's Meniere's disease affects his ability to work is not a "medical opinion" to be weighed under 20 C.F.R. § 404.1527. The governing regulations define "medical opinions" as "assertions involving judgments about a patient's 'symptoms, diagnosis and prognosis'." *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1527(a)(2)). *See also Rivera ex rel. H.R. v. Comm'r of Social Sec.*, No. 3:11-cv-163, 2012 WL 3562023, at * 4 (S.D. Ohio Aug. 17, 2012) (Report and Recommendation), *adopted,* 2012 WL 3871944 (S.D. Ohio Sept. 6, 2012) (a record was not a "medical opinion" because it did not contain an opinion as to the severity of plaintiff's impairments, an assessment of the functional limitations imposed by those impairments, or an opinion as to whether the plaintiff's impairments met or equaled a Listing). Dr. Lager's March 2012 letter does not include either an opinion about plaintiff's

symptoms, diagnosis or prognosis or an assessment of the functional limitations imposed by his Meniere's disease. Thus, the ALJ was not bound to evaluate the March 2012 "general opinion" in accordance with the regulatory factors. Nor could the ALJ reasonably rely on the March 2012 letter to formulate plaintiff's RFC and find plaintiff is not disabled since the letter provides no information about plaintiff's functional limitations and no judgments about his symptoms, diagnosis or prognosis.

Dr. Lager's May 2013 assessment is a "medical opinion" that must be evaluated in accordance with the treating physician rule. The ALJ did not comply with the rule when evaluating the May 2013 opinion. The ALJ did not properly consider whether the opinion was entitled to controlling weight because it is (1) well-supported by medically acceptable clinical findings and laboratory diagnostic techniques, and (2) not inconsistent "with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2); *Gayheart*, 710 F.3d at 376. Rather, in evaluating Dr. Lager's May 2013 opinion, the ALJ repeated many of the same errors which prompted the remand by this Court following ALJ Temin's earlier decision.

First, ALJ Flynn found there was an internal inconsistency in Dr. Lager's report between her findings that she was uncertain as to the number of unscheduled breaks plaintiff would need, that he averaged four attacks per month, and that she expected plaintiff would be "off task" at least 25% of a given work day. (Tr. 323). The ALJ also found that Dr. Lager's "off-task" finding was unsupported by the treatment records. (*Id.*) This Court addressed a similar finding by ALJ Temin in the Court's earlier decision in this matter and found:

> [S]ubstantial evidence does not support the ALJ's decision to disregard Dr. Lager's opinion based on a lack of "objective evidence" to support her findings

that plaintiff would need to be off task 25% of the workday and miss 4 days of work a month. (Tr. 19). The Sixth Circuit has explained: 'As a general matter, doctors in good faith surely may rely on what their patients tell them have been their symptoms between one visit and another. And surely they may make reasoned assessments (again as a general matter) about the seriousness of a disease based on an objectively-supported diagnosis of the disease, the symptoms reported to them by their patients, the progression of the disease and their medical understanding of the disease.' *Sharp v. Barnhart*, 152 F. App'x 503, 508-09 (6th Cir. 2005) (citing 20 C.F.R. § 404.1528)).
. . . .

Dr. Lager's diagnosis of Meniere's disease was supported by plaintiff's symptoms as reported by Dr. Lager, the history of his condition as noted by [Drs. Paul T. Chandler, M.D. and Dr. Rolando F. Go, M.D.], and his audiogram results. (Tr. 236-37, 239, 247, 255-58, 260, 262-63). At the majority of his visits with these treating physicians, plaintiff reported symptoms of vertigo. Given the episodic nature of Meniere's disease, a plaintiff need not seek treatment for every attack in order for an ALJ to credit a treating physician's opinion concerning the frequency of attacks [citation omitted]. Accordingly, the Court determines that the ALJ has failed to provide "good reasons" for not giving Dr. Lager's opinion substantially more weight.

(Tr. 404-05).

Similarly, ALJ Flynn's decision to disregard Dr. Lager's opinion on the severity of plaintiff's Meniere's symptoms and the frequency of his attacks as internally inconsistent and unsupported by her treatment records is not substantially supported. The record establishes that plaintiff's Meniere's attacks were unpredictable and varied in intensity and frequency. (*See* Tr. 404). This is typical of the disease, which "is characterized by paroxysmal attacks of vertigo, tinnitus, and fluctuating hearing loss. Remissions are unpredictable and irregular, but may be longstanding; hence, the severity of the impairment is best determined after prolonged observation and serial reexamination. . . ." *Spencer v. Astrue*, No. 3:10-cv-00365, 2012 WL 404896, at *10 (S.D. Ohio Feb. 8, 2012) (Report and Recommendation), *adopted sub nom.*

*Spencer v. Comm'r of Soc. Sec.*, 2012 WL 966053 (S.D. Ohio Mar. 21, 2012) (citing Listing 2.00B(2), 20 C.F.R. Part 404, Subpart P, Appendix 1). Dr. Lager's findings that she was unsure how often plaintiff would need to take unscheduled breaks during an 8-hour workday and for how long is consistent with the unpredictable and irregular nature of the disease. Her opinion that plaintiff is "likely" to be off task 25% or more of a typical workday is likewise consistent with the post-attack manifestations of the disease given that plaintiff could be incapacitated by a Meniere's attack on any given day. The ALJ's findings based on alleged inconsistencies in these findings are not substantially supported by the medical record established prior to the remand of this matter.

ALJ Flynn also stated in his written opinion that "some" new evidence received post-remand showed that plaintiff's symptoms were not as severe or as frequent as Dr. Lager had reported. (Tr. 323). The ALJ did not identify any of this post-remand evidence that he considered to be inconsistent with Dr. Lager's opinion and did not explain how the new evidence was inconsistent with Dr. Lager's pre-hearing records. Thus, the ALJ's decision to give Dr. Lager's May 2013 opinion less than controlling weight is not substantially supported by the record viewed as a whole.

Further, even if the ALJ's decision were supported in this regard, the ALJ was bound to evaluate the opinion in accordance with the regulatory factors provided in 20 C.F.R. § 404.1527(c) and give "good reasons" for the weight he gave the opinion. *Wilson*, 378 F.3d at 544; *see also Blakley*, 581 F.3d at 408 ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors

provided in" 20 C.F.R. § 404.1527(c) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4).

The ALJ failed to conduct the required analysis. The ALJ did not consider the length of the

treatment relationship and the frequency of examination, the nature and extent of the treatment

relationship, supportability of the opinion, consistency of the opinion with the record as a whole,

and the specialization of the treating source. *Wilson*, 378 F.3d at 544; *see also Blakley*, 581

F.3d at 408. ALJ Flynn did not go beyond the purported absence of evidence in support of Dr.

Lager's assessment of the frequency and severity of plaintiff's attacks and the alleged

inconsistency in her opinion as to the percentage of the day plaintiff would be off task. (Tr.

323). The ALJ therefore did not correct any of the errors found by this Court in its prior

decision. Although the ALJ purports to rely on "some" new evidence to discount Dr. Lager's

assessment, he does not cite any of the evidence that he believes is inconsistent with Dr. Lager's

opinion. (*Id.*).

     Further, on closer review, this evidence does not appear to be inconsistent with Dr.

Lager's assessment of the frequency and severity of plaintiff's Meniere's episodes and

symptoms. The new evidence consists of treatment notes from August 2, 2012 to October 6,

2016 generated by Dr. Lager and other medical providers at HealthSource of Ohio. These

treatment records show that plaintiff generally reported that his Meniere's symptoms of dizziness

and balance issues continued unabated from August 2012 to October 2016, although medication

did provide some relief. In August 2012, plaintiff presented with dizziness which he described

as "floating, light-headed, and spinning." (Tr. 548). Relieving factors included medication.

(*Id.*). Associated symptoms included ear ache, hearing loss, loss of vision, nausea and

weakness.  (*Id.*).  He had run out of some of his medicines at that time and had been cutting

the dose in half.  (*Id.*).  His current medications were Meclizine 25 mg three times per day as

needed, Paxil, and Lisinopril for hypertension.  (Tr. 549).  In July 2015, plaintiff reported that

he "is very unsteady on his feet," he had "fallen several times," and he had "not been able to eat

because of the nausea."  (Tr. 559).  He reported an ENT had previously prescribed Antivert,

which "worked briefly."  (*Id.*).  Plaintiff's current medications included Meclizine.  (Tr. 561).

In August 2015, plaintiff reported he "is dizzy still and falls a lot" and there "hasn't been much

change since last visit."  (Tr. 565).  He had an appointment scheduled with an ENT.  (*Id.*).

He was continued on Meclizine.  (Tr. 567).  Plaintiff reported in October 2016 that his

Meniere's symptoms occurred randomly and were mild, and he had been out of Meclizine but it

controlled his symptoms well.  (Tr. 569).

     These records do not substantially support the ALJ's decision to give Dr. Lager's opinion

only "some weight."  The ALJ found earlier in his written decision that "more recent treatment

records describe [plaintiff's] symptoms as mild [Tr. 569] [and] the record shows that his

medications worked and controlled his symptoms well when he took them as prescribed [Tr. 295,

559, 569]."  (Tr. 322).  The records the ALJ cites refer to plaintiff's reports in December 2011

that his Meniere's medication, Meclizine, was working (Tr. 295); his report in July 2015 that

Antivert had "worked briefly" (Tr. 559); and his report in October 2016 that he was out of his

medication but it controlled his symptoms well (Tr. 569).  These records showing brief

improvement with a new medication or an isolated report of improved symptomatology do not

constitute substantial evidence that contradicts Dr. Lager's opinion as to the frequency and

18

severity of plaintiff's symptoms. It was not proper for the ALJ to rely on these reports and to ignore other reports that document symptoms of nausea, vomiting, and vertigo. *See Spencer,* 2012 WL 404896, at *10:

> Rather than evaluating [the medical] opinions in light of the sudden, temporary, or fluctuating symptoms indicative of Meniere's disease, generally, and Plaintiff's episodic symptoms, and by failing to recognize that Plaintiff could have unpredictable, irregular-even longstanding-remissions, the ALJ improperly selected those portions of Plaintiff's medical record that supported a non-disability determination without considering that such evidence of improvement was consistent with [the medical] opinions. This constituted error because an "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports [her] position." [citations omitted]

*Id.* The ALJ selected isolated records showing periods of improvement and improperly ignored other records that were consistent with Dr. Lager's opinion. Plaintiff's sole assignment of error should be sustained.

**III. This matter should be reversed and remanded for an award of benefits.**

If an ALJ fails to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan,* 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994).

Remand for payment of benefits is warranted only "where proof of the disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id*.

A judicial award of benefits is warranted in the present case. "[A]ll essential factual issues have been resolved and the record adequately establishes . . . plaintiff's entitlement to benefits." *Id.*; *see Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir. 1990); *see also Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 782 (6th Cir. 1987).

The evidence strongly supports the conclusion that plaintiff suffers from Meniere's disease with episodic and debilitating symptoms. In finding otherwise, the ALJ failed to follow the Court's instructions on remand and issued a decision that is not substantially supported by the evidence. Accordingly, an Order remanding for benefits is warranted.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for payment of benefits consistent with the Social Security Act, and the case be terminated on the docket of this Court.

Date: 1/28/19

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BOBBY LANHAM,
    Plaintiff,

Case No. 1:17-cv-775
Barrett, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).